UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RAYMON SELLERS,<br><br>  Plaintiff,<br><br>  v.<br><br>DERRICK STEVENS dba STAGECOACH RESTAURANT; JIN R. WONG; WONDA Y. WONG; JANICE WONG; and JANET WONG,<br><br>  Defendants. | No. 2:20-cv-01787 WBS AC<br><br>MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff moves for summary judgment against all defendants[1] in this disability access action under (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; (2) the Unruh Civil Rights Act ("Unruh Act"), California Civil Code §§ 51-53; and (3) denial of full and equal access to public

---

[1] Plaintiff's motion also seeks default judgment against Derrick Stevens. The clerk's office has already his default. (Docket No. 47.) Plaintiff may file his motion for default judgment against Stevens with the assigned magistrate judge as required by Local Rule 302(c)(19).

1

facilities, California Health & Safety Code § 19955.[2]  (Second Am. Compl. ("SAC") (Docket No. 36).)

I.   Factual and Procedural Background

Plaintiff is a C5 quadriplegic who cannot walk and uses a power wheelchair for mobility.  (Defs.' Resp. to Pl.'s Statement of Facts ("PSUF") at ¶ 1 (Docket no. 51-1).)  Stagecoach Restaurant ("Stagecoach"), constructed in 1968, is a public accommodation located at 4365 Florin Road, Sacramento, California.  (Id. ¶ 2; Pl.'s Resp. to Defs.' Statement of Facts ("DSUF") ¶ 90 (Docket no. 52-1).)  Defendants Jin R. Wong, Wonda Y. Wong, Janice Wong, and Janet Wong own the real property on which Stagecoach is located, and lease it to defendant Derrick Stevens who operates Stagecoach.  (PSUF ¶¶ 3-4.)

Plaintiff visited Stagecoach on May 31, 2020, and it was open to the public for take-out orders only.  (Id. ¶ 7.)  The main entrance of Stagecoach is not accessible because there is no ramp.  (Id. ¶ 8.)  There is a designated accessible parking space behind Stagecoach with a curb ramp to the sidewalk that leads to a rear entrance.  (Id. ¶ 9.)  On May 31, 2020, the rear entrance was locked.  (Id.)  Plaintiff contends he was unable to place a take-out order on May 31, 2020 because he could not access the restaurant and there was no signage telling him how to place an order.  (Id. ¶ 10.)  Defendants contend that there was signage indicating that a take-out order could be placed by phone and

---

[2]   Neither side's briefing makes any mention of plaintiff's third claim under the Health and Safety Code. Therefore, the court will not rule on plaintiff's third claim in this order.

2

would be delivered to the vehicle. (Id.)

Plaintiff again visited Stagecoach on August 21, 2020 with a friend and it was open to the public for take-out orders and outdoor dining. (Id. ¶¶ 11-12.) Plaintiff contends he wanted to dine on the outdoor patio but could not access it or the hostess table at the main entrance due to the lack of a curb cut. (Id. ¶¶ 12-13.) However, plaintiff does not dispute that the route leading from the accessible parking space to the rear entrance also leads to the gated outdoor patio dining area. (DSUF ¶ 91.) Plaintiff's friend got out of the vehicle and ordered food to go. (Decl. of Raymon Sellers ¶ 8 (Docket No. 48-2).) Plaintiff contends he continues to order food from Stagecoach at least twice a month but sends others to pick it up for him. (PSUF ¶ 15.)

Plaintiff filed his initial complaint in this action on September 30, 2020. (Docket No. 1.) After the filing of plaintiff's complaint, defendants renovated the inside and outside of the property in 2021, including the parking lot, dining counter, and restrooms. (PSUF ¶¶ 22-26.)

Plaintiff's expert, Michael Bluhm, visited the restaurant on January 20, 2021 and November 3, 2021. (Decl. of Michael Bluhm ¶ 3 (Docket No. 48-4).) Defendants' expert, Craig Lobnow, visited Stagecoach on June 30, 2022. (DSUF ¶ 94.)

Plaintiff seeks in this motion injunctive relief under the ADA for barriers he encountered and additional barriers he has learned of during the pendency of this action, which are described below, and statutory damages under the Unruh Act.

3

I.   ADA Liability[3]

    A.   Accessible Entrance

Plaintiff acknowledges that the front entrance of Stagecoach is not accessible pursuant to the ADA Accessibility Guidelines ("ADAAG"), and it is likely not readily achievable to make it accessible. (Pl.'s Mem. ISO Mot. ("Pl.'s Mot.") at 12 (Docket No. 48-1).) The rear entrance to the restaurant is the designated accessible entrance and has a gate outside of it. Plaintiff seeks an injunction requiring defendants to: "(1) keep the rear gate propped open at all times during business hours[;] (2) keep the designated accessible rear entrance unlocked and available for use during business hours[;]" and (3) if weather conditions "prevent the rear entrance from being opened by customers," . . . "defendants [shall] install a doorbell or two-way communication device at the rear door for customers to summon Stagecoach staff to open the door for them." (Id. at 13.)

Plaintiff's expert has submitted photos of the rear entrance area taken during the expert's two visits to Stagecoach. (Decl. of Bluhm, Exs. C-F.) The photographs show the rear gate in an open position. (Id, Ex. D.) A sign in all-caps is posted

---

[3] Plaintiff did not personally encounter all of the alleged barriers. Nevertheless, the Ninth Circuit allows "[a]n ADA plaintiff who has standing as a result of at least one barrier . . . [to] challenge all barriers in that public accommodation that are related to his or her specific disability." Doran v. 7-Eleven, 524 F.3d 1034, 1047 (9th Cir. 2008). Here, plaintiff personally encountered the alleged barriers in accessing the entrance and the outdoor patio dining area on May 31, 2020 and August 21, 2020. The other alleged barriers relate to plaintiff's quadriplegic status. Accordingly, plaintiff also has standing to challenge these other barriers under the ADA.

4

1  by the rear gate which reads: "Due to COVID-19 gate is locked!
2  For handicap entrance please call (916) 422-9296 and we will
3  assist you immediately!" (Id., Ex. E.)  There are also signs on
4  the rear door, which comes after entering the rear gate, that
5  state: "Due to windy conditions please use front door," "please
6  check in at the front counter to be seated," and that take-out is
7  available from 7am-3pm daily and the number to call to place an
8  order.  (Id., Exs. E-F.)

9  Defendants' expert has submitted photos taken on June
10 30, 2022 which again show the rear gate in an open position.
11 (Decl. of Craig Lobnow, Ex. 1 ("Lobnow Evaluation"), at 2-3, 19,
12 22 (Docket No. 51-4).)  The photos also appear to show the sign
13 about calling Stagecoach for the "handicap entrance" to still be
14 in place.  (Id. at 2.)

15 The only photos submitted by plaintiff which show the
16 rear gate in a locked position were taken in August 2020, and
17 were not taken by plaintiff during either of his visits to
18 Stagecoach.  (Decl. of Sellers, Exs. D, E; id. ¶¶ 11-12.)
19 However, there is no indication that Stagecoach was open for
20 business at the time these photographs were taken as all the
21 doors and gates are closed and there are no cars in the parking
22 lot.  The photo angles also do not show the rear entrance door
23 beyond the rear gate, and therefore, the court cannot determine
24 if there is any sign posted about calling for take-out orders or
25 access.

26 The evidence submitted by the parties shows the rear
27 gate, which leads to the rear accessible entrance, in an unlocked
28 position on multiple occasions, including as recent as June 30,

2022.  Plaintiff presents no evidence that the rear gate or entrance is locked during business hours.  Further, plaintiff presents no evidence about the need for a "doorbell or two-way communication system" as there is a sign stating the number customers can call for the "handicap entrance."

Based on the evidence submitted by both parties, it is disputed whether the rear gate and entrance were unlocked, and if the above-described signs were posted at the time of plaintiff's two visits.  There is a genuine dispute of material fact as to whether the accessible entrance needs to be "maintained" in a usable manner as plaintiff's injunctive relief requests.  See 28 C.F.R., pt. 36, App. C § 36.211 ("[a] public accommodation shall maintain in operable working condition those features of facilities . . . that are required to be readily accessible to and usable by persons with disabilities").

Accordingly, plaintiff's motion for summary judgment on the ADA claim for an accessible entrance will be denied.

B.   Slopes within Designated Accessible Parking

The ADAAG require that floor or ground surfaces of the parking space and access aisle must not include slopes steeper than 1:48 (approximately 2.0 percent).  36 C.F.R., pt. 1191, App. D § 502.4.[4]  After renovations of the parking lot were complete at Stagecoach, plaintiff's expert measured slopes within the designated accessible parking space and aisle up to 5.5 percent.  (Decl. of Bluhm ¶ 16; id., Ex. G.)  Defendants' expert measured

---

[4]  Plaintiff cites to the 1991 ADAAG which state the slope cannot be more than 1:50 (exactly 2.0 percent).  See 28 C.F.R., pt. 36, App. D § 4.6.3.

slopes not greater than 2.0 percent in the designated accessible parking space and aisle.  (Lobnow Evaluation at 4-16; Decl. of Craig Lobnow ¶ 12 (Docket No. 51-3).)

There is a genuine dispute of material fact whether the designated accessible parking space and aisle have slope levels compliant with the ADAAG.  Accordingly, plaintiff's motion for summary judgment on the ADA claim for accessible parking will be denied.

  C. Accessible Route from Public Sidewalk

Pursuant to the ADAAG, "[a]tleast one accessible route shall be provided within the site from . . . public streets and sidewalks."  36 C.F.R., pt. 1191, App. B § 206.2.1.  Plaintiff argues that there is a "somewhat accessible path of travel to the front entry walkway" but that it is not compliant with the ADAAG in several ways (excessive slopes, large openings within the walking surface, no kick plate, and a closed front gate).  (Pl.'s Mot. at 14.)  Defendants' expert acknowledges that there is no accessible path of travel from the public sidewalk.  (Decl. of Lobnow ¶ 9.)  Therefore, the next inquiry is whether removing this barrier is "readily achievable."  See 42 U.S.C. § 12182(b)(2)(A)(iv).

The ADA sets out four factors to be considered in determining whether removal of a barrier is "readily achievable":

> "(A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the

7

```
                impact otherwise of such action upon the
                operation of the facility;

                (C) the overall financial resources of the
                covered entity; the overall size of the business
                of a covered entity with respect to the number of
                its employees; the number, type, and location of
                its facilities; and

                (D) the type of operation or operations of the
                covered entity, including the composition,
                structure, and functions of the workforce of such
                entity; the geographic separateness,
                administrative or fiscal relationship of the
                facility or facilities in question to the covered
                entity."
```

42 U.S.C. § 12181(9)(A)-(D).  Notably, the four-factor test set forth by the ADA inevitably is a question of fact which requires a showing of evidence.

An ADA plaintiff bears the initial burden of "plausibly showing how removal of an architectural barrier is readily achievable under the circumstances."  Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1035-36 (9th Cir. 2020).  "Only if the plaintiff first makes a plausible showing that the barrier removal is readily achievable, does the defendant then have to negate the showing and prove that removal is not readily achievable."  Id. at 1036 (emphasis in original).

Here, plaintiff does not plausibly show that an accessible route is readily achievable.  Plaintiff's expert concluded that filling in gaps in the front walkway would cost $50.  (PSUF ¶ 47.)  However, a response to plaintiff's claim would also require the renovation of the parking lot, the front entry walkway, the front gate, and the dining patio.  Paintiff

8

presents no evidence of the costs of the totality of these renovations. Nor does plaintiff provide any evidence of defendants' financial resources or the nature of defendants' business. (See Pl.'s Mot. at 14.)

Even if plaintiff met his initial burden, defendants' expert concludes that an accessible route from the sidewalk is not possible because "[g]iven the ground conditions, the entire lot would have to be regraded with extensive ramping and terrain alteration in order to eliminate the changes in elevation" – making the renovations not readily achievable. (Decl. of Lobnow ¶ 9)

Therefore, because plaintiff has not met his burden of establishing an essential element of his ADA claim for an accessible route from the public sidewalk plaintiff's motion for summary judgment on this part of the ADA claim will be denied.

D. Slopes and Height Changes at Accessible Entrance

Under the ADAAG, "required maneuvering clearances" at doorways, changes in level of the floor or ground surface are not permitted.[5] 36 C.F.R., pt. 1191, App. D § 404.2.4.4. Plaintiff's expert measured slopes of up to 3.4 percent at the exterior side of the designated accessible entrance. (Decl. of Bluhm ¶ 19; id., Ex. I.) Defendants do not dispute this fact and instead state that "the entry has a path of travel with a maximum 5.0 [percent] slope allowance." (PSUF ¶ 37; DSUF ¶ 107.)

Plaintiff's expert also found that a floor mat at the

---

[5] Plaintiff cites to the 1991 ADAAG which contain the same requirement. See 28 C.F.R., pt. 36, App. D § 4.13.6.

9

interior side of the designated accessible entrance creates a vertical height change of more than 1/4 inch.  (Decl. of Bluhm ¶ 22.)  Defendants argue that the floor mat was moved slightly to cover the threshold of the entrance during plaintiff's expert's inspection.  (DSUF ¶ 109; Defs.' Opp'n at 2 (Docket No. 51).)  However, plaintiff does not argue that the threshold of the doorway entrance is too high, rather that there is an excessive height change within the maneuvering clearances at the designated accessible entrance.

There is no genuine dispute of material fact as to the excessive slopes and height changes within the maneuvering clearances at the designated accessible entrance.  Plaintiff has proven that defendants failed to comply with the ADA requirement that there be no changes in level of the floor or ground surface within the maneuvering clearances at doorways.

Again, however, plaintiff bears the initial burden of "plausibly showing how removal of an architectural barrier is readily achievable under the circumstances."  Lopez, 974 F.3d at 1035-36.  Plaintiff's expert opines that grinding the pavement would cost between $300 to $500 and replacing the landing would be $1,000.  (PSUF ¶ 39.)  However, plaintiff presents no further evidence concerning the other readily achievable factors that the ADA requires to be considered such as the overall financial resources or the effect on expenses and resources.  See 42 U.S.C. § 12181(9)(A)-(D).  Therefore, plaintiff has not met his initial burden.

Accordingly, the court will deny summary judgment for plaintiff on the ADA claim for the excessive slope and height

1  changes within the maneuvering clearances at the designated
2  accessible entrance because plaintiff has failed to prove an
3  essential element of his claim.

      E.   Seating Spaces

Plaintiff argues that the dining counter within Stagecoach is only 38 inches in length and is required to be 60 inches in length. (PSUF ¶ 51.) For this requirement, plaintiff cites to the 1991 ADAAG, not the 2010 ADAAG. (See Pl.'s Mot. at 14 (citing 28 C.F.R., pt. 36, App. D § 5.2).) There is no such requirement in the 2010 ADAAG. See 36 C.F.R., pt. 1191, App. D § 902.

The Department of Justice promulgated the ADAAG in 1991 and revised it in 2010. See Kohler v. Flava Enters., Inc., 826 F. Supp. 2d 1221, 1229 (S.D. Cal. 2011). All architectural and structural elements in a facility are required to comply with the 1991 ADAAG to the extent that compliance is readily achievable; by contrast, the 2010 ADAAG apply only to elements that have been altered in existing facilities, or that fail to comply with the 1991 ADAAG, on or after March 15, 2012. 28 C.F.R. § 36.304(d)(1)-(2). Plaintiff admits that the dining counter was altered in 2021. (PSUF ¶ 25.) Therefore, it is subject to the 2010 ADAAG.

Because the 2010 ADAAG do not contain a requirement that the dining counter be 60 inches in length, there is no ADA violation. Accordingly, plaintiff's motion for summary judgment on the ADA claim for the dining counter will be denied.

Plaintiff also argues that there are not enough accessible table seating spaces at Stagecoach. The ADAAG require

1 that 5.0 percent of seating spaces at Stagecoach be accessible.
2 See 36 C.F.R., pt. 1191, App. B § 226.1.  Plaintiff's expert
3 contends that Stagecoach only has one of four required accessible
4 tables and that the following tables need to be added: two in the
5 main dining area, one in the outdoor patio, and one in the rear
6 dining area.  (Decl. of Bluhm ¶¶ 33-37.)  In contrast,
7 defendants' expert contends that there are 21 total tables at
8 Stagecoach in "three functional areas" of the restaurant, and
9 that there is an accessible table in each area, which meets the 5
10 percent requirement.  (Decl. of Lobnow ¶¶ 26-28; Lobnow
11 Evaluation at 24-26.)
12       The experts dispute whether the number of accessible
13 tables in Stagecoach is sufficient under the ADA, and therefore,
14 there is a genuine dispute of fact.  Accordingly, plaintiff's
15 motion for summary judgment on the ADA claim for the amount of
16 seating spaces will be denied.
17       F.   Restroom
18            Plaintiff lists a number of alleged violations present
19 in the restroom at Stagecoach: (1) insufficient clear width of
20 the doorway opening; (2) door lock that requires tight grasping,
21 pinching, and/or twisting; (3) insufficient turning space; (4)
22 improperly positioned toilet and flush control; (5) improperly
23 positioned toilet paper dispenser; (6) improperly positioned grab
24 bars; (7) insufficient knee and toe clearances under the
25 lavatory; (8) improper height of light switch; and (9) improper
26 height of mirror.  (Pl.'s Mot. at 16-19.)  Defendants do not
27 dispute that these ADA violations exist in the restroom.  (See
28 PSUF ¶¶ 59-83.)

1            In response, defendants merely note that as of the date
2   of their expert's visit to Stagecoach, June 30, 2022, there was
3   no restroom open to the public.  (Lobnow Evaluation at 27.)  The
4   restroom at Stagecoach was completely renovated in 2021, and
5   defendants present no explanation regarding why the restroom was
6   closed on June 30, 2022.  (See PSUF ¶ 26.)
7            Even if the restroom is not open to the public,
8   plaintiff's ADA claim for the restroom is not necessarily mooted.
9   Injunctive relief is the only form of relief available in a
10  private action for violation of the ADA's Title III, and
11  therefore a "defendant's voluntary removal of alleged barriers
12  prior to trial can have the effect of mooting a plaintiff's ADA
13  claim."  Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th
14  Cir. 2011).  However, if the ADA violation could "reasonably be
15  expected to recur" then the claim is not moot.  Friends of the
16  Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,
17  190 (2000).
18           Defendants present no evidence that the restroom will
19  remain closed.  Accordingly, the court must conclude that the ADA
20  violations are likely to recur because defendants simply can
21  unlock the restroom door and open it to the public again.
22           However, once again, plaintiff carries the initial
23  burden of plausibly demonstrating that removal of the barriers is
24  readily achievable.  See Lopez, 974 F.3d at 1035-36.  Plaintiff
25  presents not even an iota of evidence to meet this burden with
26  respect to the restroom violations.  Despite sending an expert to
27  examine every inch of Stagecoach in order to find additional
28  barriers, plaintiff does not provide the court with any evidence

13

whatsoever of the readily achievable factors through his expert. See 42 U.S.C. § 12181(9)(A)-(D).

Plaintiff appears to assume that just because defendants were able to renovate portions of the restroom in 2021 that it is readily achievable for defendants to remove all barriers in the restroom now. If plaintiff wanted the court to take this motion seriously, he could have given the court some tangible evidence beyond bald unsupported assumptions.

Accordingly, plaintiff's motion for summary judgment for the ADA claim for the restroom will be denied.

III. Unruh Act

The Unruh Act provides in relevant part that every person is "entitled to the full and equal accommodations, advantages, privileges, or services in all business establishments of every kind whatsoever" notwithstanding his or her disability. Cal. Civ. Code § 51(b). "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of [the Unruh Act]." Cal. Civ. Code § 51(f) (internal citations omitted).

Plaintiff does not allege a violation of the Unruh Act independent from his claims under the ADA. (SAC ¶¶ 38-39.) As discussed above, the court will not grant summary judgment on any of the alleged ADA violations. Therefore, the court will not grant summary judgment for plaintiff on his Unruh Act claim based on the alleged ADA violations.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Docket No. 48) be, and the same hereby is,

DENIED without prejudice to re-filing the motion after further discovery.

Dated: August 4, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE